**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                               No. CIV 01-1225 BB/RLP

$230,766.45 IN U.S. CURRENCY
(DOMESTIC PROPERTY), ET AL.,

        Defendants,

AND

ANTONIUS M. HEIJNEN, LIZA PERRAGLIO,
AND RUWACH INTERNATIONAL LTD.,

        Claimants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court for consideration of two motions filed by Plaintiff: (1) a motion to dismiss the claims of Antonius Heijnen and Liza Perraglio ("Claimants") to the money that is the subject of this forfeiture action (Doc. 30), or to grant summary judgment as to those claims; and (2) a motion for summary judgment as to the merits of the forfeiture action (Doc. 31). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that the first motion will be granted, and the second held in abeyance to allow Ruwach International, Ltd. ("Ruwach") an opportunity to obtain representation by a licensed attorney.

This is a forfeiture action filed pursuant to 18 U.S.C. § 981(a)(1)(C), alleging that money contained in bank accounts in this country and in Germany constitutes, or was derived from, the

proceeds of securities fraud committed by Claimants and other persons associated with Ruwach International, Ltd. ("Ruwach"). Claimants deny that any securities transactions occurred, and deny that any fraud occurred. The first question to be resolved, however, is whether Claimants have a sufficient legal interest in the bank accounts and funds to give Claimants standing to challenge this forfeiture action.

**Motion Concerning Claimants' Interest in Funds:** After the forfeiture complaint was filed, Claimants filed a verified claim of interest, title, rights, and ownership concerning the Defendant funds (Doc. 9). This claim was signed under penalty of perjury by Claimant Perraglio, although Claimant Heijnen's signature was not under penalty of perjury. In the document Claimants state that the Defendant funds "were the official property of Ruwach International Ltd., a New Mexico corporation." Claimants are identified as the President and CEO of the corporation (Heijnen) and a Director of the corporation (Perraglio). Subsequently, the United States alleged, as an undisputed fact in support of the motion to dismiss, that the bank accounts belonged to Ruwach International. Claimants denied that allegation, maintaining that the three separate bank accounts in Albuquerque and the one bank account in Germany belong to "independent corporate entities." At no time have Claimants alleged or argued that they personally are owners or holders of the bank accounts in question, or the funds contained in those accounts. The question, therefore, is whether Claimants' status as President and Director of the corporation or corporations that maintained the bank accounts is sufficient to provide the necessary standing in this case.

In order to have standing to contest a forfeiture of property under Section 981, a person must have a colorable ownership interest or a colorable possessory interest in the property. *U.S. v. Contents of Accounts Nos. 3034504505 and 144-07143*, 971 F.2d 974, 985-86 (3d Cir. 1992). There

must be some evidence that the person has dominion or control over the property. *Id.*; *U.S. v. One Parcel of Land,* 902 F.2d 1443, 1444 (9th Cir. 1990); *cf. U.S. v. Eight Hundred Sixty Thousand Three Hundred and Ten Dollars*, 2001 WL 661128 (10th Cir.) (unpublished) (ownership or possessory interest is necessary to confer standing to contest forfeiture, under drug-trafficking forfeiture statute). A few cases have addressed the issue of whether a stockholder in a corporation has standing to try to prevent forfeiture of assets owned by the corporation. These cases have determined that a shareholder does not have such standing, because ownership of the shares of a corporation is not the same thing as ownership of the corporation's assets. *See U.S. v. Wyly,* 193 F.3d 289, 304 (5th Cir. 1999) (corporation is separate entity from its shareholders, and shareholders' interest in corporation does not equate to ownership of specific corporate assets; therefore, shareholders had no standing to contest forfeiture of corporate assets); *U.S. v. New Silver Palace Restaurant, Inc.*, 810 F.Supp. 440, 442-43 (E.D.N.Y. 1992);[1] *U.S. v. Taylor*, 2000 WL 715916 (D.Or.) (unpublished); *cf. U.S. v. Buti Lounge*, 1998 WL 40794 (N.D.Ill.) (unpublished) (recognizing corporate president lacked standing, but finding fact issue on whether property owned in individual capacity). In New Mexico, as in Louisiana, New York, and Oregon, a corporation is a separate entity from its shareholders, even if there is only one shareholder. *See, e.g.*, *Marchman v. NCNB Texas Nat'l Bank*, 898 P.2d 709, 716 (N.M. 1995). Thus, the *Wyly*, *New Silver Palace*, and *Taylor* cases are persuasive authority as to the lack of standing of any shareholder of Ruwach International, to

---

[1]The *New Silver Palace* opinion suggests that, if the corporation has not filed a notice of claim, a shareholder might be able to bring a derivative action on behalf of the corporation, contesting the forfeiture. The Court need not decide whether this is true, since Ruwach International did file a notice of claim in this case, as did the corporation involved in the *New Silver Palace* case.

contest forfeiture of the bank accounts in this case.[2] The Court therefore finds that Claimants do not have standing, as either shareholders, directors, or officers of Ruwach International or any other corporate owner of the bank accounts in question, to challenge the forfeiture of the funds contained in those accounts.[3]

The Court recognizes that Claimants have not argued that their status as shareholders, or CEO, or director, provides them the requisite standing to contest this forfeiture action. Instead, they maintain they are lienholders "in regards to" Ruwach International, and that this provides them with standing. There are two major problems with this argument. First, Claimants submitted no evidence proving that they hold any liens on any assets of the corporation. Instead, they simply state that they are lienholders, in the argument portion of their brief. Mere argument, however, is not sufficient to avoid summary judgment; instead, the party contesting the motion must submit evidence supporting its factual contentions. *See Trap Rock Industries, Inc. v. Local 825*, 982 F.2d 884, 892 (3d Cir. 1992) ("[T]his court has made it clear that arguments, allegations or "facts" contained in briefs, and that are not evidentiary because they are not sworn to, are insufficient to overcome a motion for summary judgment based on sworn affidavits."). The Court therefore cannot accept Claimants' assertion that they are lienholders.

---

[2]Claimants have not identified themselves as shareholders of Ruwach, but as CEO and President, and as a director. However, the Court assumes they are shareholders of Ruwach, giving them the benefit of the doubt, because a CEO or director of a corporation, absent any ownership interest in the corporation, would have even less of a possessory or ownership interest in the corporation's assets than would a shareholder. *See, e.g.*, NMSA § 53-16-11 (upon dissolution of corporation, assets are distributed to shareholders); *Mid-Century Ins. Co. v. Gardner*, 11 Cal.Rptr.2d 918, 921 (Ct.App. 1992) (CEO and sole shareholder did not own truck titled to corporation).

[3]It should be noted that Claimants made no attempt to show that Ruwach is merely a shell corporation, and that they are the true owners of the bank account funds in question.

In addition, Claimants have not identified the corporate assets on which they allegedly hold liens.  To have standing to contest the forfeiture of the bank account funds, it would not be enough to simply be a secured creditor of Ruwach International, holding a lien on some asset of the corporation.  Instead, Claimants would be required to have a security interest, or lien, on the very property as to which forfeiture is sought--in this case, the bank account funds.  *See United States v. $515,060.42*, 152 F.3d 491, 497 (6th Cir.1998) (to establish Article III standing in a forfeiture proceeding, the claimant must demonstrate that he has a security interest in at least a portion *of the defendant property*); *U.S. v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994) (plain language of § 981(a)(2) requires that the claimant be an owner or a lienholder of an interest *in the forfeitable property*).  There is no evidence, or even an argument, that Claimants have a security interest in the funds the United States seeks to forfeit in this case.  Therefore, Claimants do not have standing, as purported lienholders of Ruwach International, to contest the forfeiture.

Pursuant to the foregoing, the Court will grant the motion to dismiss the claims of Heijnen and Perraglio, and will dismiss them as parties to this lawsuit.

**Representation of Remaining Claimant, Ruwach International:**  One issue that has not yet been addressed in this case is the fact that Ruwach International, Ltd., the sole remaining claimant to the funds in question, is not being represented by counsel.  Claimant Heijnen appears to have represented Ruwach *pro se* in his capacity as CEO and President of the corporation.  This is not permissible.  Instead, Ruwach may appear in this court only if represented by a licensed attorney.  D.N.M.L.R. Civ. 83.7 ("A corporation or a partnership must be represented by an attorney authorized to practice before this Court.");  *see Rowland v. California Men's Colony*, 506 U.S. 194, 201-02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (reiterating long-standing rule that "a corporation

5

may appear in the federal courts only through licensed counsel"); *U.S. v. High Country Broadcasting Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (president and sole shareholder of corporation was not allowed to represent corporation in court, due to rule that corporation can appear only through licensed counsel); *cf. DeVilliers v. Atlas Corp.*, 360 F.2d 292, 294 (10th Cir. 1966) (noting that corporation can appear in court of record only by an attorney, but addressing merits of corporation's appeal because it was not clear whether chief officer of corporation was an attorney or not).

At this point Ruwach is subject to dismissal from this case, as it has no proper representative before the Court. In the interest of fairness, however, the Court will allow Ruwach an opportunity to retain counsel. If Ruwach is able to obtain counsel, counsel shall have thirty days from the date of this opinion to file a response to the motion for summary judgment. In deciding whether to expend the time and resources necessary for filing a response, retained counsel should consider the present record of the evidence presented to the Court by the parties, and the legal issues raised in this case, as discussed below.[4]

The evidence in this case includes the following: (1) Ruwach obtained $500,000 from Father Arcillo by representing that the money would be used to purchase a "bank guarantee" at a discount, from Ruwach; Father Arcillo would then be able to resell the guarantee to an "exit buyer," at a substantial profit; (2) Correspondence exchanged with Father Arcillo indicated that the face value of the guarantee would be $694,000, which would be rounded to $700,000, giving him "a slight advantage"; (3) The clear implication of this correspondence is that Father Arcillo would be

---

[4] It should be noted that while Claimants did submit some evidentiary material, they made a great number of factual assertions in the briefs that are not supported by admissible evidence such as affidavits, depositions, or documents. Such unsworn factual assertions, as pointed out above, are not evidence and may not be considered in deciding whether to grant summary judgment.


purchasing, with a payment of only $500,000, a bank guarantee with a face value of $700,000; (4) There has been no explanation at all as to why a bank would be willing to accept only $500,000 in exchange for a binding obligation to pay $700,000;[5] (5) The bank allegedly issuing the purported guarantee has never been identified; (6) The government submitted expert testimony, by affidavit, that bank guarantees are not traded on any established market; Claimants' only response was to argue that bank guarantees do exist, and that almost anything can be bought or sold; (7) In fact, the $500,000 was not used to pay for a bank guarantee; instead, $150,000 of it was wired to an account in Germany and the rest kept in this country and some of it was used, according to Claimants' briefs, to pay "bills" and "liabilities, etc.";[6] (8) no evidence has been presented tending to show that the purported bank guarantee actually existed, that there was a possibility Father Arcilla could actually purchase it and make the huge profit he expected, or that the transaction was legitimate in any respect; (9) the loan agreements (as Claimants characterize them) between Ruwach and various individuals promise incredible interest rates, up to 200% for a six-month period; and (10) no evidence

---

[5]This is what a bank guarantee is--a promise by the bank to pay a certain amount of money, should the person on whose behalf the guarantee is made (usually an accountholder) fail to make a payment. Bank guarantees are frequently used in international commerce, as a seller will feel much more secure giving credit to a foreign buyer if the seller knows there is a bank guaranteeing payment of the amount of the credit. *See, e.g.,* Glossary, www.mantissa.co.uk, definition of bank guarantee; www.tamimi.com, "Bank Guarantees" (describing such guarantees under law of United Arab Emirates); www.ubs.com, "Bank Guarantees" (describing such guarantees as offered by one Swiss bank, UBS).

[6]Claimants state that the $150,000 wired to Germany was for the purchase of the guarantee. This statement alone tends to prove the government's case. It is simply impossible to believe that a guarantee with a face value of $700,000, or even $500,000, could be purchased for $150,000. It is also impossible to believe that an "exit buyer," assuming one existed, would pay Father Arcilla more than $500,000 for a guarantee that cost only $150,000.

has been presented that would indicate how Ruwach would be able to pay such high interest rates to the lenders.

The evidence concerning the bank guarantee, including documentary evidence not listed above, shows strongly that the transaction, rather than being genuine, was a type of transaction called a "prime bank scheme." This type of scheme has been the subject of warnings from the Securities and Exchange Commission ("SEC") and the Treasury Department, as well as a number of court cases both criminal and civil. *See, e.g.,* "Prime Bank Trading Programs, High Yield Investment Programs, Roll Programs and Private Placement Programs," available at www.publicdebt.treas.gov//cc/ccphony9.html (discussing fraudulent schemes remarkably similar to that revealed by the evidence submitted in this case, including a number of words and phrases that appear throughout the documents used by Ruwach, such as "good, clean, clear and of non-criminal origin" funds; "fresh cut" guarantees; "exit buyer"; and "tranches"); SEC Commissioner Laura S. Unger, "Investing in the Internet Age: What You Should Know and What Your Computer May Not Tell You," (2/3/2000) available at www.sec.gov/news/speech/spch342.htm; *U.S. v. Jennings,* 2002 WL 1402090 (S.D.N.Y.) (unpublished); *Stokes v. U.S.*, 2001 WL 29997 (S.D.N.Y. 2001) (unpublished); *Nat'l Council of the Churches of Christ in the USA v. First Union Natl' Bank of Virginia*, 1998 WL 416744 (E.D.Va. 1998) (unpublished); *S.E.C. v. Gallard*, 1997 WL 767570 (S.D.N.Y. 1997) (unpublished).

In response to the evidence noted above, Claimants have raised a number of arguments. First, they maintain neither the bank guarantee transaction nor the loans had anything to do with securities or wire fraud, and that the forfeiture statute relied on by the government does not even apply. This issue must be discussed separately for the bank-guarantee transaction and the smaller loan

transactions, as they involve different types of instruments and facts. At this point it appears the bank guarantee Father Arcilla attempted to purchase from Ruwach, if it existed, would be considered a "security" for purposes of the securities-fraud statute. The definition of "security" under 15 U.S.C. § 77(b)(a)(1) includes a note, evidence of indebtedness, or investment contract. A bank guarantee, which obligates a bank to pay a certain amount of money under certain conditions, could be considered either a note or evidence of indebtedness. Several courts have held that bank guarantees or other bank instruments, being marketed in the same manner as Ruwach marketed this bank guarantee, would be considered notes or other types of securities. *See, e.g., Gallard; S.E.C. v. Pinckney*, 923 F.Supp. 76, 80-82 (E.D.N.C. 1996).

As to the loan contracts with other individuals, Claimants argue repeatedly that the loan documents are not securities, but simply loan documents. Claimants contend a corporation is legally authorized to borrow money, at whatever interest rate it wishes, without implicating federal securities laws. This is incorrect. A promissory note, which is what the individuals lending money to Ruwach signed, is presumed to be a security, since the definition of "security" includes notes and other evidence of indebtedness. *See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1538 (10th Cir. 1993); *LeBrun v. Kuswa*, 24 F.Supp.2d 641, 644-6 (E.D.La. 1998). This presumption can be rebutted by showing that the note more closely resembles the "family" of instruments that are deemed not to be securities. *Id.* Types of notes that are not securities are consumer financing notes, notes secured by a home mortgage, a note secured by a lien on a small business or some of its assets, notes secured by accounts receivable, notes evidencing loans by commercial banks, a note evidencing a "character" loan to a bank customer, or a note that formalizes an open-account debt incurred in the ordinary course of business. *Id.* The loans in this case, made by a number of private individuals to

9

a corporation, do not closely resemble any of these types of loans, which are either secured loans or loans made in the course of ordinary business transactions, or both.

Since the "family resemblance" is lacking, the notes issued by Ruwach must be analyzed to determine whether they are of a type that should be added to the list of non-security notes. *Id.* Four factors must be considered in making this determination: the motivations of the buyer and seller (or lender and borrower, in this case); the plan of distribution of the notes; the public's reasonable perceptions; and the existence of any risk-reducing factors suggesting the notes are not securities. *Id.* Where the borrower's motivation is to raise money for the general use of the business, as in this case, and the lender's primary motivation is the interest the note is expected to generate, the note is likely to be a security. *Stone*, 998 F.2d at 1538-39. Furthermore, there is no indication that Ruwach limited its borrowing activities to a few select people with expertise in the field; instead, it appears Ruwach was attempting to recruit as many lenders as it could. This type of plan for distributing the notes is also indicative of a security. *Id.*[7] As to the third factor, the public's reasonable expectations, there is little information in the record, and the Court will not address it. Finally, the fourth factor weighs in favor of finding the notes to be securities, because the notes are uncollateralized and uninsured, and not regulated by any other body of federal law or regulation. *See Reves v. Ernst & Young*, 494 U.S. 56, 69 (1990). This means regulation under the securities laws is necessary if any federal oversight is to be had over the loans.

---

[7]The evidence in the record indicates that at least 28 individuals had lent money to Ruwach. While this is not a large number, there is nothing to indicate that Ruwach would have ceased its efforts if this case had not arisen, or that Ruwach intended to allow only a small, specific group of individuals to participate in the loan program. The intended scope of the program was therefore aimed at the general public, not a small and select group.

As to the issue of fraud in the sale of the notes (or, as Claimants would prefer to term it, the loan transactions between Ruwach and the lenders), several facts appear undisputed. First, Ruwach promised to pay exorbitant rates of interest, up to 100% every six months. Second, Claimants have presented no evidence tending to indicate that Ruwach had any means of generating the money necessary to pay such high rates of interest. Third, Claimants have submitted no evidence (other than their mere statement in the briefs, which as discussed above is not evidence) to show that Ruwach is indeed a corporation controlling billions of dollars in assets, and thus capable of paying off the loans it entered into. It therefore appears that Ruwach fraudulently induced individuals to lend it money, by falsely promising to pay extraordinary rates of interest.

All of the foregoing indicates to the Court that Ruwach was engaged in securities transactions under federal law,[8] and the funds derived from those transactions are subject to forfeiture. Should Ruwach decide to file a response to the motion for summary judgment, through a licensed attorney, evidence contradicting the above must be submitted or identified in the record. Otherwise, summary judgment will be warranted.

**Conclusion:** Based on the foregoing, the Court will grant the motion to dismiss or for summary judgment, as to Claimants' right and title to the funds contained in the frozen bank accounts. The Court will hold in abeyance for thirty days the motion for summary judgment on the merits, to allow Ruwach an opportunity to retain a licensed attorney and file a response to that motion, should Ruwach choose to do so after considering the above discussion.

---

[8]The SEC has repeatedly found securities violations in very similar programs. *See SEC v. Norton*, 21 F.Supp.2d 361 (S.D.N.Y. 1998); *SEC v. Infinity Group Co.*, 993 F.Supp. 324 (E.D.Pa. 1998); *SEC v. Bremont*, 954 F.Supp. 726 (S.D.N.Y. 1997); *SEC v. Deyon*, 977 F.Supp. 510 (D.Me. 1997); *SEC v. Glantz*, 1996 WL 109470 (S.E.C. 1996); *SEC v. Beatty*, 1995 WL 686624 (S.E.C. 1995).

**ORDER**

A memorandum opinion having been entered in this case, it is hereby ORDERED that Plaintiff's motion to dismiss or, in the alternative, for summary judgment (Doc. 30) be, and hereby is, GRANTED, and Antonius Heijnen and Liza Perraglio are dismissed from this case. In addition, it is hereby ORDERED that Plaintiff's motion for summary judgment on the merits (Doc. 31) be, and hereby is, held in abeyance for thirty days. Should Ruwach International, Ltd. not retain a licensed attorney and file a response, through that attorney, within thirty days, the motion for summary judgment will be granted.

Dated this 18th day of March, 2003.

                                                                        BRUCE D. BLACK
                                                                       United States District Judge

**ATTORNEYS**:

**For Plaintiff**:
Stephen R. Kotz

**For Claimants:**
Antonius Heijnen, pro se
Liza Perraglio, pro se